IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2021 MAR -9 PM 4:55

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CAUSE NO. 1:20-CV-998-LY |
| MOHAMMAD REZA ASSADI | § | |
| DEBTOR. | § | |

## MEMORANDUM OPINION AND ORDER

This cause arises from an appeal of the Order Converting Case to Chapter 7 rendered on September 11, 2020, by the United States Bankruptcy Court for the Western District of Texas, Austin Division. Before the court are *pro se* Appellant Mohammad Reza Assadi's Brief filed December 11, 2020 (Doc. #18), Appellee Randolph N. Osherow's Brief filed December 16, 2020 (Doc. #20), and Assadi's Reply Brief filed February 10, 2021 (Doc. #22).

On March 3, 2021, the court entertained oral argument, at which all parties appeared either in person or through counsel. Before the hearing, the court received by email correspondence a Stipulation of Parties agreeing to certain facts of the case and the January 19, 2021 transcript from the underlying bankruptcy court case. Having carefully considered the filings, argument, and applicable law, the court concludes that the bankruptcy court's conversion order should be affirmed for the reasons to follow.

### I. Factual Background

Debtor Assadi filed a voluntary petition under Chapter 11 of the Bankruptcy Code (the "Code") on July 7, 2020. The case was involuntarily converted from Chapter 11 to Chapter 7 on September 14, 2020, based on reasons stated on the record at a show-cause hearing. Assadi timely filed a Notice of Appeal to this court on September 28, 2020, challenging the bankruptcy court's conversion order.

Assadi requested a stay pending the appeal, which the bankruptcy court denied by listing,

*inter alia*, Assadi's "unpaid pre-petition domestic support obligation, his ability to pay his post-petition domestic support obligation,[1] his attempt to sell property that has title issues on an expedited basis, his lack of income,[2] and his lack of bank accounts, among other issues" as reasons supporting its decision that an appeal would be unlikely to succeed.

Outside of a property in Austin and properties in Lee County, Assadi's bankruptcy estate does not appear to have any assets of significant value. Before filing for bankruptcy, Assadi owned (or was the principal for) Roblan, LLC ("Roblan"), Gidland Corp. ("Gidland"), Landmag Corp., F&F Operating Company, LLC, and F&F Family, LP.

Austin Property

In early 2015, Assadi secured $363,500 in third-party financing from Amir Batoei to pay a debt owed by Assadi and Roblan with a property at Sunrise Terrace (the "Austin Property"). Assadi drafted documents for Batoei to form Family AB Austin Feb5, LP ("AB Austin"), which borrowed the funds. Batoei signed a personal guaranty to Ozona National Bank ("Ozona Bank") to obtain the funds. AB Austin signed a Deed of Trust to the bank to secure the land. Roblan transferred the property by General Warranty Deed with Vendor's Lien to AB Austin.

Assadi informed Batoei that Assadi would pay the note to Ozona Bank, and on or about May 28, 2015, Assadi presented Batoei with a document entitled "Special Warranty Deed with Vendor's Lien" that Assadi had prepared, whereby AB Austin would convey the Austin Property to Assadi, individually, purportedly in exchange for a vendor's lien. However, the deed

---

[1] Since then, Assadi has amended his schedules to remove the pre-petition domestic support debt. Still, Assadi has post-petition domestic support monthly payments in the amount of $645.

[2] Assadi misleadingly listed $2,260 as his monthly income. This figure includes a one-time $532 IRS refund, unemployment income of $828 a month, and COVID-19 assistance of $900 a month. Assadi mentioned the possibility of obtaining a job at a mortgage company for the first time at this court's March 3, 2021 hearing.

purporting to grant Batoei a vendor's lien was devoid of any vendor's lien language in the body of the document. Assadi promised that he would not record the Special Warranty Deed until Ozona Bank and Batoei had been repaid in full. Batoei signed the Special Warranty Deed and gave it to Assadi, who retained the original, signed document. Assadi did not record until October 2018, over three years later, but before the Ozona Bank note had been paid in full.

Lee County Properties

In summer 2015, Assadi asked for Batoei's help in paying a debt Assadi owed which was secured by a lien on approximately 92 acres of real property in Lee County, Texas, located on County Road 103, consisting of seven separate but contiguous tracts of land (the "Lee County Properties"), which were owned by Assadi's company, Gidland. Similar to the prior transaction, Assadi prepared documents for Batoei to form Lee AB Land, LLC ("Lee AB"), which on August 25, 2015, borrowed $371,200 from Round Top State Bank ("Round Top Bank"), to pay off Gidland's debt on the Lee County Property, titled in Gidland. Batoei signed a personal guaranty to Round Top Bank. Lee AB signed a Deed of Trust to the bank securing the land. Gidland transferred the property by Warranty Deed to Lee AB.

Assadi informed Batoei that Assadi would pay the note to Round Top Bank, and presented a document entitled "Special Warranty Deed with Vendor's Lien" that Assadi had prepared whereby Lee AB would convey the Lee County Property to Assadi, individually, in exchange for a vendor's lien in favor of Batoei. However, the language providing Batoei with a vendor's lien was not in the document. Assadi promised that he would not record the Special Warranty Deed until Round Top Bank and Batoei had been repaid in full. Batoei signed the Special Warranty Deed and gave it to Assadi, who retained the original, signed document. Assadi did not record it until October 2018, over three years later, but before the debt to Round Top Bank was paid in full.

Between October 2015 and September 2018, Assadi sold four tracts of the Lee County Property and the net sales proceeds were delivered to Round Top Bank in partial payment of the loan. Despite Assadi's agreements to pay the Ozona Bank and Round Top Bank loans, most of those payments were made by Batoei. As a result, a dispute arose between Assadi and Batoei.

The State Court Lawsuit

On October 1, 2018, Assadi went to the County Clerk's offices in Travis County and Lee County and recorded the Special Warranty Deeds to the Austin Property and for the Lee County Properties, and then recorded deeds to transfer the properties to Assadi's personal company, F&F Family, LP. As a result, F&F Family, LP became the record owner of real estate that was previously owned by AB Austin and Lee AB, each of which was primarily obligated on loans to Ozona Bank and Round Top Bank respectively, and for which Batoei was obligated as a guarantor. The Trustee claims the Austin Property and the Lee County Properties had equity at the time of the transfer to F&F Family, LP. Batoei, Austin AB and Lee AB had paid for the properties, and were obligated to continue paying the mortgages, but title was in F&F Family, LP.

On October 19, 2018, the Batoei Creditors filed a lawsuit styled *Amir Batoei, et al. v. Mohammad Assadi, et al.*, Cause No. D-1-GN-18-006408 in the 353rd Judicial District Court of Travis County, Texas (the "State Court Lawsuit") against Assadi, F&F, Family LP and F&F Operating Company, LLC, the general partner of F&F, Family LP.

In October 2018, Batoei paid off the note to Round Top Bank who transferred the debts and the lien on the Lee County Properties to Batoei.

After filing the State Court Lawsuit, the Batoei Creditors recorded a *lis pendens* in Lee and Travis Counties to identify the property interests in dispute owned by Assadi, F&F, Family LP, or F&F Operating Company, LLC. Trial on the State Court Lawsuit was set for February 3, 2020.

On January 24, 2020, less than two weeks before the trial, Assadi caused F&F Family, LP to transfer the Austin Property and Lee County Properties back to himself. Thus, the deed records in both Travis and Lee Counties reflects Assadi as record owner of the properties.

On March 12, 2020, the state court granted judgment in the State Court Lawsuit against Assadi, F&F, Family LP, and F&F Operating Company, LLC which was subsequently modified on March 27, 2020. The Modified Final Judgment granted a judgment for $742,824.18 jointly and severally against all three defendants. Also, the Modified Final Judgment granted the Batoei Creditors a vendor's lien in the Austin Property and Lee County Properties in the amount of $413,091.91. In other words, Batoei has a total claim against the bankruptcy estate for $742,824.18, which is comprised as a secured claim of $413,091.91 and an unsecured claim in the amount of $329,732.27. Batoei is, therefore, the largest secured and unsecured creditor in the bankruptcy case.

Assadi appealed the judgment in the State Court Lawsuit to the Texas Third Court of Appeals, but F&F, Family LP, and F&F Operating Company, LLC have not appealed the judgment and it is final as to F&F, Family LP and F&F Operating Company, LLC. The appeal has been stayed due to the bankruptcy filing.

## II. Standard of Review

Bankruptcy court fact finding is reviewed by the district court for clear error and conclusions of law are reviewed *de novo*. *Wiggains v. Reed* (*In re Wiggains*), 848 F.3d 655, 660 (5th Cir. 2017). Discretionary matters are reviewed for abuse of discretion.

## III. Analysis

The sole issue on appeal is whether the bankruptcy court abused its discretion by converting the case from Chapter 11 to Chapter 7. The court "shall" dismiss or convert a case under Chapter 11 to one under Chapter 7, whichever is in the best interest of the creditors and the estate, for "cause." 11 U.S.C. § 1112(b)(1). The Code defines cause with a non-exhaustive list. *Id.* § 1112(b)(4). If cause is established, a discretionary finding of "unusual circumstances" that it would not best serve the various parties is necessary to prevent conversion. *Id.* § 1112(b)(2).

"The inquiry under § 1112 is case-specific, focusing on the circumstances of each debtor." *United Savs. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.* (*In re Timbers of Inwood Forest Assocs., Ltd.*) 808 F.2d 363, 371–72 (5th Cir. 1987) (en banc). Here, the bankruptcy court properly converted the case to Chapter 7 because of the Assadi's apparent intent to fund a Chapter 11 plan through continued litigation with Batoei and the sale of the Austin Property and Lee County Properties, notwithstanding all the title and legal issues. Further, the bankruptcy court made its determination on lack of income and lack of a bank account, two enumerated causes for conversion. *See* 11 U.S.C. § 1112(b)(4)(A) ("substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation") and (M) ("inability to effectuate substantial consummation of a confirmed plan").

The Code does not define "best interest of the creditors." When determining "cause," the court must consider the totality of the circumstances. *Matter of T-H New Orleans, L.P.*, 116 F.3d 790, 802 (5th Cir. 1997). However, one recurring question presented to most courts is what assets would be available to a Chapter 7 Trustee to liquidate and administer for the benefit of unsecured creditors if the case were converted. Dismissal would vest all property and causes of action back into Assadi. The Trustee has determined that that would be "futile and not advance the ball."

The major creditor, Batoei, would suffer the consequences of dismissal. Conversion, on the other hand, allows the Trustee to work with Batoei to resolve the title issues, which were caused by the transfers among Assadi and his entities. The Trustee hopes that he will be able to resolve those issues with Batoei to allow a quicker and more efficient sale of both Austin Property and Lee County Properties. If successful, funds will likely be available for the unsecured creditors.

The Trustee argues that there was ample cause for conversion. Thus, unless unusual circumstances were identified at the conversion hearing, establishing that conversion was not in the best interest of creditors, the bankruptcy court must either convert or dismiss. 11 U.S.C. § 1112(b)(2). Though the Code does not define "unusual circumstances," it does not focus on unusual circumstances of a debtor's life; it focuses on unusual circumstances that make it not in the best interest of the creditors or estate. *Id; see In re Baribeau* 603 B.R. 797 (Bankr. W.D. Tex. 2019). The court agrees with the findings of the bankruptcy court that Assadi was, and is, unable to show unusual circumstances. Therefore, the court concludes that the bankruptcy court did not abuse its discretion by converting Assadi's case from Chapter 11 to Chapter 7.

## IV. Conclusion

**IT IS THEREFORE ORDERED** that the September 11, 2020 Order Converting Case to Chapter 7 of the United States Bankruptcy Court for the Western District of Texas is **AFFIRMED**.

**IT IS FURTHER ORDERED** that Assadi's Emergency Motion for Stay Pending Appeal filed February 26, 2021 (Doc. #25) is **DISMISSED**.

A final judgment shall be filed subsequently.

SIGNED this 7th day of March, 2021.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE